UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NOE ANTONIO MORAN CONTRERAS,

                Petitioner,

      v.                                    **ORDER**
                                                  26-CV-1960-SJB

MARKWAYNE MULLIN et al.,

                Respondents.
-----------------------------------------------------------------X
**BULSARA, United States District Judge:**

Petitioner Noe Antonio Moran Contreras ("Petitioner"), a citizen of El Salvador who has lived in the United States since 2006, and came here as a child, was arrested on April 2, 2026, by U.S. Immigration and Customs Enforcement ("ICE") officers. (Pet. for Writ of Habeas Corpus filed Apr. 2, 2026 ("Pet."), Dkt. No. 1 ¶¶ 15, 20, 23–24; Resp'ts' Letter filed Apr. 3, 2026 ("Resp'ts' Letter"), Dkt. No. 4 at 2). ICE arrested Petitioner just after he was released from the Nassau County Correctional Center on bail. (Pet. ¶ 24; Resp'ts' Letter at 2). He filed a petition for a writ of habeas corpus with this Court that same day. (Pet.). He has been detained by Respondents at the Nassau County Correctional Center since April 2, 2026. (*Id.* ¶¶ 23–24; Resp'ts' Letter at 2). For the reasons explained below, the writ is provisionally granted.

The Government has filed an opposition to Petitioner's writ that suggests that the sole basis for Petitioner's detention is 8 U.S.C. § 1225, (Resp'ts' Letter at 3), despite the fact that Petitioner has been in the United States nearly two decades, (Pet. ¶ 15). (Furthermore, he is married to a U.S. citizen and has a U.S. citizen child). (*See* Decl. of Patrick Heerey ("Heerey Decl."), attached to Resp'ts' Letter, Dkt. No. 4-1 ¶ 7; Pet ¶ 20).

The Government's position is that someone is subject to removal and detention under Section 1225(b)(2), as someone who is seeking admission to the United States, (Resp'ts' Letter at 3 (citing 8 U.S.C. § 1225(b)(2)(A))), notwithstanding that they have been living here for months, if not years.  The vast majority of courts in this District have rejected this argument.  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490–91 (S.D.N.Y. 2025) ("[T]he line historically drawn between sections 1225 and 1226, which mak[es] sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens seeking admission into the country, whereas section 1226 governs detention of non-citizens already in the country. . . . This Court has similarly been unable to identify any authority to support Respondents' expansive interpretation of § 1225(b)." (quotations omitted)); *Padilla Molina v. DeLeon*, No. 25-CV-6526, 2025 WL 3718728, at *3 (E.D.N.Y. Dec. 23, 2025) ("This Court agrees with Petitioner that he is detained subject to Section 1226, not Section 1225.  In so holding, the Court joins the hundreds of district court decisions that have rejected Respondents' expansive interpretation of Section 1225 as inconsistent with the plain text and overall structure of the INA.") (collecting cases); *Ulloa Montoya v. Bondi*, No. 25-CV-6363, 2025 WL 3718694, at *3 (E.D.N.Y. Dec. 23, 2025) (same); *Rodriguez-Acurio v. Almodovar*, -- F. Supp. 3d --, No. 25-CV-6065, 2025 WL 3314420, at *23 (E.D.N.Y. Nov. 28, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts.  The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases

2

decided by over 160 different judges sitting in about fifty different courts spread across the United States." (quoting *Barco Mercado v. Francis*, -- F. Supp. 3d --, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025))).

There are two separate troubling issues in this case. Respondents contend that "an NTA was issued to Petitioner contemporaneously with his detention on April 2, 2026," (Resp'ts' Letter at 3), suggesting that their arrest of Petitioner satisfied the requirements this Court outlined in *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025). Despite claiming that the issuance of the NTA was "contemporaneous," Respondents offer no information as to the time that the NTA was issued relative to Petitioner's arrest. (*See* Heerey Decl. ¶ 19 (asserting only that Petitioner's NTA was issued "that same day")). Of course, issuing an NTA after someone has been detained is a kind of papering over and cover-up for illegal detention. *See Gopie*, 2025 WL 3167130, at *1 (concluding that ICE had no authority to arrest petitioner where ICE issued petitioner's NTA three days after he was arrested).

Not only do Respondents offer no evidence to support their assertion that the issuance of the NTA was "contemporaneous" with Petitioner's detention, Respondents also rely on defective arrest warrants to justify their arrest of Petitioner. Respondents contend that ICE "issued an I-200 warrant for Petitioner on March 7, 2026, nearly a month prior to the date on which he was detained." (Resp'ts' Letter at 3). That warrant was never served on Petitioner and contains no service signature. (I-200, attached to Heerey Decl. as Ex. B, Dkt. No. 4-2). Respondents also submitted a second I-200 arrest warrant that was served on Petitioner on April 2, 2026, the same day he was arrested,

3

but they make clear that arrest warrant was also dated March 7, 2026.  (I-200, attached to Heerey Decl. as Ex. D, Dkt. No. 4-2; Heerey Decl. ¶ 18).  Both arrest warrants were issued before an NTA was issued, that is, before Petitioner was placed in removal proceedings.  Warrants cannot be issued weeks before the NTA process has begun, since the warrant authority relied upon derives from the existence of an NTA.  *See Gopie*, 2025 WL 3167130, at *1.[1]

Respondents submit that the Court can decide this matter on the submissions.  (Resp'ts' Letter at 3).  The Court incorporates the reasoning of judges in this District and its sister courts and grants the writ—because at its core, detention under Section 1225 violates due process guarantees and is inapplicable and inappropriate for individuals who have lived in the United States as long as Petitioner has.

The writ is provisionally granted.  Respondents are directed to effectuate Petitioner's release by **April 4, 2026 at 9:00 A.M.** and file a letter on the docket confirming Petitioner's release by that time.  Respondents are enjoined from detaining Petitioner absent further direction from this Court.  Respondents may not use ICE ankle monitors or similar technology to monitor Petitioner, because the Court has granted the

---

[1] For these same reasons, Respondents' contention that this case is more similar to *Saamishvili v. Flanagan*, No. 25-CV-6178, 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026) is meritless.  *Saamishvili* involved someone already in removal proceedings.  Petitioner was not, having been placed in them, it seems, after he was detained.

4

writ, and is not resolving this petition on an intermediate basis by imposing bail conditions.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   April 3, 2026
Central Islip, New York